UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


J.W.B., as Trustee of the    )
J.P.B. Trust, ET AL.,        )
Plaintiffs                   )
                             )
                  v.         )  C.A. NO. 09-CV-30090-MAP
                             )
BURKHART, PIZZANELLI,        )
P.C., ET AL.,                )
Defendants                   )
                             )
and                          )
                             )
FINANCIAL COUNSELORS, LLC,   )
ET AL.,                      )
Counter-Plaintiffs,          )
Cross-Plaintiffs, and        )
Third-Party Plaintiffs       )
                             )
                  v.         )
                             )
D.B., AS TRUSTEE OF B.       )
REMAINDER TRUST, ET AL.,     )
Counter-Defendants,          )
Cross-Defendants, and        )
Third-Party Defendants       )


MEMORANDUM AND ORDER REGARDING PLAINTIFFS'
MOTION FOR ORDER TO ENFORCE SETTLEMENT AGREEMENTS
(Dkt. No. 45)

June 3, 2010


PONSOR, D.J.

## I.   INTRODUCTION

Plaintiffs, individuals and trustees of trusts holding investment and bank accounts managed by Defendants, Financial Counselors, L.L.C.; Burkhart, Pizzanelli, P.C.; Richard F. Burkhart; and Salvatore J. Pizzanelli ("Defendants"), filed suit seeking damages resulting from Defendants' alleged wire fraud, racketeering, negligence, negligent infliction of emotional distress, breach of fiduciary duty, and breach of contract, as well as violations of the Massachusetts Uniform Securities Act and Mass. Gen. Laws ch. 93A.  Plaintiffs now move to enforce certain settlement agreements that they entered into with Defendants to resolve some of their claims.  For the reasons set forth below, the court will allow the motion with specified conditions.

## II.   FACTS

Plaintiffs filed suit alleging that their accounts suffered losses as a result of unauthorized purchases and sales of "extraordinarily risky" "leveraged market sector exchange traded funds" selected by Defendants.  (Dkt. No. 47, Aff. of Counsel in Supp. of Pls.' Mot. to Enforce

Settlement Agreements and for Fees ¶ 2.)  Plaintiffs made two categories of allegations against Defendants: (1) wire fraud claims (funds transferred from Plaintiffs' accounts by forging Plaintiffs' signatures), and (2) unauthorized trading claims (unauthorized and unsuitable trades of investments in Plaintiffs' accounts).

During settlement negotiations Defendants were apparently inclined to discuss settling the wire transfer claims but prepared to litigate the trading claims. However, some Plaintiffs were unwilling to forfeit their trading claims as a condition of settlement.  To enhance the likelihood of settling the wire transfer claims, Defendants offered partial settlements, under which Plaintiffs would be allowed to settle some claims and "reserve" others for ongoing litigation.  The releases would list the reserved claims explicitly, to avoid ambiguity and to distinguish them from the claims Plaintiffs were settling.  Plaintiffs did most of the drafting work on the proposed releases to be used to memorialize this approach, and these were e-mailed back and forth as the parties negotiated.

On September 29, 2009, at Defendants' request,

Plaintiffs proposed a list of reserved claims (the "Reserved Claim Releases").  The document included, as a separate item, "Attorneys' fees or costs incurred in bringing claims against [Defendants]."  (Dkt. No. 59, Supplemental Mem. in Supp., Ex. B, Attach. 19 ¶ 2(c).)  Negotiations continued, but the attorneys' fees provision was not discussed.

On November 4, 2009, Defendants e-mailed offers to Plaintiffs' attorneys.  The e-mail instructed Plaintiffs' attorneys to draw up a release for each Plaintiff who wished to accept.  The releases were to be "in the format we have previously agreed to . . . and to the extent your clients are reserving any claims that you have presented to us . . . the settlement releases will specifically name and reserve those claims."  (Dkt. No. 59, Supplemental Mem. in Supp., Attach. 4 at 1.)

Plaintiffs interpreted "the format we have previously agreed to" and "reserving any claims that you have presented to us" to refer to the most recent draft releases for the partial settlements.  These draft releases, in Plaintiffs' counsel's view, had preserved the right of Plaintiffs to pursue awards of attorneys' fees relating to both the

4

settled claims and the claims that would be the subject of
further litigation.  Accordingly, Plaintiffs drafted
settlement documents so as to retain all claims for
attorneys' fees even on the settled claims.  Defendants'
view of the parties' intent with regard to the claims that
were being settled was different.  As to these, Defendants
assumed that the settlement covered everything, with no
trailing exposure to a later claim for attorneys' fees.
Defendants agreed that Plaintiffs would be able to claim
attorneys' fees if they prevailed on the claims that would
remain subject to ongoing litigation.

On November 16, 2009, the first Plaintiff (J.W.B. as
Trustee of the J.P.B. Trust) accepted the offer using the
agreed-upon list of reserved claims.  Defendants' counsel,
reviewing this acceptance, became concerned about the
attorneys' fees provision and within forty-five minutes of
receipt of the acceptance sent an e-mail to Plaintiffs'
counsel to confirm that the language reserving "attorneys'
fees or costs incurred in bringing claims against
[Defendants]," referred only to claims for attorneys' fees
incurred in bringing the claims that were <u>not</u> being settled.

In other words, Defendants made it clear that the releases should bar Plaintiffs from seeking attorneys' fees at some point in the future on the <u>settled</u> claims.  After discussion, Plaintiffs held to their contrary understanding, specifically that they could still seek attorneys' fees on the claims they were settling.

Plaintiffs continued to accept Defendants' offer even after Defendants had clarified its terms to exclude any future demand for fees on settled claims.  In e-mail correspondence with Defendants, Plaintiffs continued to assert -- despite Defendants' protests -- their interpretation that the settlements they were accepting permitted them to seek attorneys' fees at a later time.

Citing the dispute regarding attorneys' fees, Defendants refused to tender any payments even under the terms they had agreed to, and on December 18, 2009, Plaintiffs filed the motion now before the court seeking to enforce the terms of the settlement agreements.

On January 13, 2010, the court heard oral argument on Plaintiffs' motion.  At the hearing, the court found that Defendants' interpretation of the settlement agreements was

6

correct and Plaintiffs were barred from seeking attorneys'
fees with respect to settled claims.  When the court
indicated that it would be issuing an order precisely along
the lines argued by Defendants, Defendants surprised the
court by suddenly balking.  Having prevailed on the
attorneys' fees issue, they now took the position that there
had been no "meeting of the minds" regarding the original
settlement, and everything was off the table.  The court
requested supplemental briefing regarding its authority to
enforce the agreement that the court found -- and Defendants
up to then agreed -- the parties had entered into.

On February 19, 2010, the court heard additional oral
argument on the issue.  At the hearing, the court expressed
its intention to enforce the settlement agreements as
Defendants originally understood them, barring Plaintiffs
from seeking attorneys' fees with respect to any settled
claims.  In sum, the court found that Plaintiffs'
misinterpretation of the settlements did not take the whole
deal off the table; it merely placed the parties in the
position they had actually negotiated.

Defendants then raised another issue.  The settlement

agreements provided for interest on the settlement amounts,
to run from a date two weeks after Plaintiffs executed the
settlement documents until Defendants actually paid the
agreed amount.  (See, e.g., Dkt. No. 47, Ex. 9, Mutual
General Release and Assignment of J.W.B. on behalf of the
J.P.B. Trust ¶ 1.)

    Defendants requested equitable relief from the
accumulated interest.  They argued that any delay in payment
resulted from the dispute over the attorneys' fees provision
and was therefore attributable to Plaintiffs.  Plaintiffs
countered that interest should continue to run until paid,
as the Agreements provided.  Plaintiffs noted that neither
party ever contested the amounts due, that Plaintiffs had
never contested that the Agreements were enforceable,
irrespective of the dispute over fees, and that nothing had
ever prevented Defendants from paying the amounts they had
agreed to pay.

    The Agreements specify that they are governed by
Massachusetts law (see, e.g., Dkt. No. 47, Ex. 9, Mutual
General Release and Assignment of J.W.B. on behalf of the
J.P.B. Trust ¶ 8), and the parties do not contest its

applicability.

### III.  DISCUSSION

A.  <u>The Agreements are Enforceable and Attorneys' Fees
on the Settled Claims are Waived</u>

Plaintiffs argue that the settlement agreements are enforceable and that they do not include the waiver of any later claims for attorneys' fees.  Defendants make two counter-arguments.  First, they argue that settlement agreements clearly reflected the parties' intent that payments on the settled claims would cover everything and would not leave Defendants exposed to subsequent demands for attorneys' fees.  In addition, and in something of a contradiction, they also argue that the settlement agreements were ambiguous with respect to attorneys' fees and are consequently now unenforceable in their entirety.

The court finds Defendants' first argument convincing, but not their second.  As noted, it will therefore grant Plaintiffs' motion, with the understanding, as the court has found, that the payments pursuant to the settlement agreements reflect the parties' intent that they cover all potential damages related to the particular settled claims. As to these claims, in other words, Plaintiffs will not at

9

some future date be permitted to seek attorneys' fees.

In general, a contract is formed when an offer is
accepted.  <u>Alison H. v. Byard</u>, 163 F.3d 2, 6 (1st Cir. 1998)
(citing <u>Ismert and Assocs., Inc. v. New England Mut. Life
Ins. Co.</u>, 801 F.2d 536, 541 (1st Cir.1986)).  In this case,
Defendants' offer was clear, and Plaintiffs accepted.  Thus,
there is a binding agreement.

As to the terms of the agreement: the e-mail trail
supports Defendants' interpretation of their offer and
indicates that it was clearly communicated to Plaintiffs by
November 16, 2009, at the latest.  Defendants were offering
to settle a portion of Plaintiffs' claims on the manifest
understanding that the payments, with appropriate interest,
would cover everything.  No issue of attorneys' fees would
linger behind with regard to the settled claims.  As to all
Plaintiffs except J.W.B. on behalf of the J.P.B. Trust,
there can be no colorable debate on this point, since all
other Plaintiffs conveyed their acceptances <u>after</u>
Defendants' counsel made that portion of the settlement
terms crystal clear.  Even as to J.W.B., however, the
court's interpretation of the settlement terms is well

supported by the negotiation history.

Defendants also argue that there is now no agreement at all, either because the offer was ambiguous on its face or because Plaintiffs' acceptance was ambiguous in operation. Neither argument is convincing.

The offer itself is not rendered ambiguous by Plaintiffs' disagreement over the proper interpretation of its terms.  Whether a contract term is ambiguous is a question of law.  Allen v. Adage, Inc., 967 F.2d 695, 698 (1st Cir. 1992).  As a matter of law, "[a] contract is not ambiguous simply because litigants disagree about its proper interpretation."  Alison H., 163 F.3d at 6.  To be ambiguous, the language at issue must be "reasonably prone to different interpretations."  Id. (quoting Fowler v. Boise Cascade Corp., 948 F.2d 49, 54 (1st Cir. 1991).  Set in the context of the parties' negotiations, the language at issue was reasonably prone to only one interpretation.  Defendants had stated that they were not offering to settle unless Plaintiffs waived attorneys' fees on the settled claims. They made this point clearly, explicitly, and repeatedly. There was no ambiguity in the terms of the offer and hence

11

no ambiguity as to what Plaintiffs were accepting.

Plaintiffs' subsequent challenge to Defendants'

interpretation of the resulting agreements was not

sufficient grounds to call the validity of those acceptances

into doubt.

Plaintiffs' acceptance was likewise unambiguous.  For

an agreement to be enforceable as a contract, the parties

must have agreed to all its material terms.  Situation

Management Systems, Inc. v. Malouf, Inc., 724 N.E.2d 699,

703 (Mass. 2000) ("It is axiomatic that to create an

enforceable contract, there must be agreement between the

parties on the material terms of that contract, and the

parties must have a present intention to be bound by that

agreement.").  Defendants assert that Plaintiffs did not

intend to be bound by the Agreement and were holding out for

an alternative agreement, one in which all claims for fees

would be reserved.  The evidence suggests otherwise.  On

November 16, 2009, at 3:08 p.m., when Defendant sent its

first clarifying e-mail, it became entirely clear that the

offer did not include a reservation of all claims for

attorneys' fees.  Plaintiffs nonetheless accepted, and

12

nothing in the correspondence conditioned their acceptances on any contrary interpretation.

Moreover, this appears to have been Defendants' contemporary understanding of events.  On November 19, 2009, Defendants' counsel sent an e-mail to Plaintiffs' counsel indicating that Defendants regarded all the acceptances as binding: "We expect that your clients will honor the deal that was offered."  (Dkt. No. 59-22, Pls.' Supplemental Mem., Ex. B., Attach. 25.)  The court agrees with Defendants' original assessment of Plaintiffs' intent and finds that the offers were unambiguously accepted.

### B.   Defendants Are Responsible for the Interest Otherwise Due under the Agreements

Defendants also seek equitable relief from the provision of the Agreements requiring payment of interest running from two weeks after each Plaintiff accepted.  They argue that Plaintiffs were responsible for any delay in payment.  Plaintiffs contend that Defendants were reluctant to pay for reasons of their own, unrelated to the contention over fees and, in any event, could have avoided the accumulation of interest by paying the agreed-upon amount.

Plaintiff's theory of Defendants' motive is supported

by Defendants' conduct before this court. Specifically, Defendants continued to oppose the motion even after the court had expressed its agreement with Defendants' own interpretation of the attorneys' fees provision. It is unfair to suggest that Plaintiffs are solely responsible for the delay and accumulation of interest. Moreover, the fact is that Defendants have had the use of the money offered in settlement and the ability to obtain interest on it while the parties' dispute was resolved. To permit them to retain this windfall would likewise be unfair.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs' Motion for an Order Enforcing Settlement Agreements (Dkt. No. 45) is hereby ALLOWED. In accepting these settlements, Plaintiffs acknowledge that they may not pursue any claim for attorneys' fees as to the settled claims. They may of course seek fees if they prevail on some or all of the claims still subject to litigation. Defendants will fully comply with the interest provisions of the settlement agreements.

A scheduling order will issue this day governing the next stage of this case.

It is So Ordered.

MICHAEL A. PONSOR
U.S. District Judge